## John C. Haskins *vs.* Joseph P. Haskins.

The use of a mill privilege purchased from the owner of a lower privilege on the sam. stream is not regulated by the use made of it before such purchase, but by what is rea-sonable and proper, conformably to the wants and usages of the community.

In a civil case the jury were instructed that the burden of proof was upon the plaintiff, and was sustained " if upon the whole proof there was a preponderance of evidence, that is to say a balance of the probabilities of the case, in his favor." *Held*, that the explana-tion was indefinite, and tended to mislead the jury.

ACTION OF TORT for filling up and obstructing the plaintiff's mill pond and stream, by sawdust and shavings from a box-board machine at the defendant's mill, above the plaintiff's on the same stream.

At the trial in the court of common pleas before *Sanger*, J., it appeared that the defendant purchased his mill and privilege of the plaintiff in 1846, previously to which the plaintiff had used said mill as a shingle mill, and suffered the dust therefrom to fall into the pond and stream now the plaintiff's. There

was conflicting evidence upon the comparative amount of saw-dust and consequent obstruction of the plaintiff's pond and stream before and since that purchase.

The defendant requested the court to instruct the jury "that, under the law, by virtue of the conveyance from the plaintiff to the defendant, the defendant acquired the right to use the mill in substantially the same manner as it was used while owned by the plaintiff; that if new machinery was invented subsequently, by means of which the defendant could do more work, he would have a right to adopt it and run it, although the effect would be to throw more dust into the plaintiff's pond; and the defendant was not restricted to the precise use which had been before made of the privilege, nor to the precise quantity and character of sawdust before suffered to fall into the stream;" and "that the plaintiff could not recover for a merely theoretical damage, but the damage must be actual and appreciable, and that if the jury should find that there was, at the date of the writ and previously, more sawdust in the plaintiff's pond than before the box-board machine was introduced, yet if they found that the plaintiff could run his mill substantially as before, the plaintiff could not recover."

The court instructed the jury "that by virtue of the conveyance from the plaintiff to the defendant, the defendant did acquire the right to use the mill substantially as it was used while owned by the plaintiff, and was not restricted to the precise use which had been before made of the privilege, nor to the precise quantity or character of the sawdust before permitted to fall into the stream; and could use new and improved machinery, if thereby the quantity and character of the sawdust, permitted by the defendant to fall into the stream, was substantially the same as when the mill was owned by the plaintiff; but if the sawdust, permitted by the defendant to fall into the stream from his box-board machine, was substantially different in character or quantity, and the plaintiff's stream, pond and mill privilege were thereby obstructed and injured, the plaintiff could recover such damage therefor as he had actually suffered thereby."

The court further instructed the jury " that the burden of proof was on the plaintiff to make out the injury set forth in his declaration ; that this burden would be sustained, if upon the whole proof there was a preponderance of evidence, that is to say a balance of the probabilities of the case, in his favor." The jury found for the plaintiff, and the defendant alleged exceptions.

*C. I. Reed*, for the defendant.

*T. D. Robinson*, for the plaintiff.

BIGELOW, J.   The rights of the parties to the use of their mills respectively did not depend on the fact that the defendant held his title to his mill privilege under a conveyance from the plaintiff.   Irrespectively of the mode in which the parties acquired title to the mill privileges, each had the right to use the water belonging to his mill in a reasonable, ordinary and proper manner for the regular and usual prosecution of his business.   Such use of the water by one millowner, although it might impair in some degree the efficiency of the mill privilege of another owner on the same stream, would give no right of action to the latter. It would be *damnum absque injuria.   Cary* v. *Daniels*, 8 Met. 476.   *Barrett* v. *Parsons*, 10 Cush. 367.   The real issue before the jury therefore, in the present case, was not as to the manner in which the plaintiff had used the upper mill and the pond below the same, while it was owned by him and before it was conveyed to the defendant; but whether the latter, since he became the owner of the upper mill, had used his privilege in a reasonable and proper manner, conformably to the usages and wants of the community, and in a mode not inconsistent with a like reasonable and proper use of the plaintiff's mill situated on the same stream below.   By the case as stated in the exceptions, it would seem that the trial of this case proceeded on a misapprehension of the true question at issue, and that the jury may have been thereby misled into an erroneous view of the rights of the parties.

We are apprehensive that they were also misled by the instructions of the court as to the amount of proof necessary to warrant them in finding a verdict for the plaintiff.   If the judge

had gone no further than to tell the jury that the burden of proof was on the plaintiff, and that this burden would be sustained if on the whole evidence there was a preponderance of proof in his favor, his instruction would have been intelligible, precise, and strictly correct. The "weight" or "preponderance of proof" is a phrase constantly used, the meaning of which is well understood and easily defined. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. But the phrase " balance of probabilities," used by the judge in his instructions as equivalent to the words " preponderance of proof," has no well settled or clearly defined meaning. It is at best a vague and indefinite phrase, and would rather lead the jury to infer that they might form their verdict on a guess at the truth, gathered from the evidence, than on a real solid conviction of it, founded on a careful scrutiny and examination of the proof. We cannot sanction an instruction which seems to us to introduce into the practical administration of justice a new phrase of doubtful signification, which tends to cloud the meaning of that which was before clear and well understood, and to confuse and mislead the jury in the discharge of their duty.

*Exceptions sustained.*